A04A1478. HENDERSON et al. v. GANDY et al.
(608 SE2d 248)

BARNES, Judge.

Claire M. Henderson, individually and in her capacity as the representative of the estate of Herbert Henderson (collectively "Henderson"), appeals the grant of summary judgment to Winston Gandy, Jr., individually, and Atlanta Cardiology Group, P.C. (collectively "Gandy"), in her attempt to amend her medical malpractice complaint against Gandy to assert a cause of action under the Fair Business Practices Act ("FBPA"). See OCGA § 10-1-390 et seq. She contends the trial court erred by finding that the FBPA did not apply because the transaction she complains of did not occur "within the public consumer marketplace" and by finding that the FBPA and her fraud claims did not relate back to the filing of her original complaint. We disagree, and affirm.

1. Although Court of Appeals Rule 27 (a) (1) and (c) (3) (iii) require that parties cite to the record by specific volume of the record and page number, counsel for both parties have failed to comply with these requirements. Instead, counsel have merely cited to record as "R. ___," or to pages of individual depositions, without regard to the specific volume number of the record in which the page might be found. This may have made counsels' task easier, but counsels' actions have made it infinitely more difficult for this court to decide the case. If, as a result, we have not located some evidence in the record, the responsibility rests with counsel.

2. In Georgia,

[t]he standards applicable to motions for summary judgment are announced in *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991). When a trial court rules on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions

therefrom most favorably toward the party opposing the motion. On appeal of the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence.

(Citation omitted.) *Overton Apparel v. Russell Corp.*, 264 Ga. App. 306, 307 (1) (590 SE2d 260) (2003).

3. Giving Henderson the benefit of all reasonable doubt and construing the evidence and all inferences and conclusions arising from the evidence in her favor, the record shows that, while visiting his daughter and son-in-law in Atlanta, Herbert Henderson, an 84-year-old, retired medical doctor, started having medical problems. His son-in-law Dr. Morgan, also a medical doctor, diagnosed Dr. Henderson's condition as possible heart failure, and arranged for Dr. Henderson to see Dr. Gandy the next morning.

After examination and an abnormal EKG that suggested an evolving cardiac event, Dr. Gandy had Dr. Henderson taken to the hospital for a cardiac catheterization. During the catheterization, Dr. Henderson's condition began to deteriorate significantly. As a result, an intra-aortic balloon pump was inserted to maintain blood flow to Dr. Henderson's heart. The same day, successful emergency quintuple bypass surgery was performed.

Because of the bypass surgery and his general medical condition, Dr. Henderson remained in the hospital for over two weeks. During this period, he developed a sacral pressure ulcer or sore.[1] When this was noted, Dr. Gandy called in wound ostomy continence nurses ("WOCNs") who specialize in treating such sores. Although he saw Dr. Henderson every day and reviewed the wound care progress notes and orders, from this point forward, Dr. Gandy left the treatment of the ulcer to the WOCNs.

When treating Dr. Henderson's sore, the WOCNs noted in his patient records that the treatment was conducted pursuant to Dr. Gandy's verbal orders or telephone orders. Subsequently, it was revealed, however, that Dr. Gandy did not verbally order the specific treatment noted after his initial consultation with the WOCNs.

Ultimately, Dr. Henderson became well enough to leave the hospital. Although his physicians recommended that he be transferred to a rehabilitation facility, Dr. Henderson elected to return to his daughter's home in Atlanta. Subsequently, complications developed, and Dr. Henderson returned to the hospital on December 1, 1995.

---

[1] The sacrum is a triangular bone located at the back of the pelvis at the base of the spine. Pressure sores occur at weight-bearing locations on the bodies of immobilized patients.

During this hospital stay, Henderson requested that another physician manage her husband's care, and, after December 3, 1995, Dr. Gandy no longer participated in his care. Dr. Henderson remained in the hospital until he was discharged March 21, 1996. He then returned to his home in California where he died on April 12, 1996.

On October 24, 1997, Henderson filed suit against Dr. Gandy and Atlanta Cardiology Group, the hospital, and a home health care group for causing Dr. Henderson's injury and death from the pressure ulcer. After discovery, Henderson filed amended complaints asserting allegations of fraud, battery, and abandonment of care based upon discovery that the medical records showing that Dr. Gandy entered orders for the treatment of the ulcer were false. Instead, according to Henderson, the WOCNs developed the orders and the records were falsified to make it appear that Dr. Gandy made the diagnoses and ordered the treatment.

Then, upon discovery that the notations regarding the record entries in Dr. Henderson's case were based on a general policy of the Atlanta Cardiology Group, Henderson filed a third amended complaint on March 7, 2003, adding a claim for relief under the Georgia Fair Business Practices Act. On May 9, 2003, Gandy moved for partial summary judgment on this claim asserting that the FBPA did not apply in this case and that the FBPA allegation in the amended complaint was barred by the statute of limitation. The trial court granted the motion and this appeal followed. The other claims remain pending below.

4. Henderson contends the trial court erred by deciding, as a matter of law, that the actions she complains of did not constitute a Fair Business Practices Act claim. The Fair Business Practices Act is intended

> to protect consumers and legitimate business enterprises from unfair or deceptive practices in the conduct of any trade or commerce. The [FBPA] forbids and declares unlawful any unfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce.

(Citations and punctuation omitted.) Adams, Ga. Law of Torts, § 32-6, p. 547 (2004). "[T]he stated intent of the FBPA is to protect the public from acts and practices which are injurious to consumers, not to provide an additional remedy for private wrongs which do not and could not affect the consuming public generally." (Citation and emphasis omitted.) *Zeeman v. Black*, 156 Ga. App. 82, 82-83 (273 SE2d 910) (1980). Thus, the scope of the FBPA is limited to acts in the conduct of consumer transactions and consumer acts or practices in trade or

commerce. *Larson v. Tandy Corp.*, 187 Ga. App. 893, 896 (4) (371 SE2d 663) (1988). Our Code defines a "consumer transaction" as "the sale, purchase, lease, or rental of goods, services, or property, real or personal, primarily for personal, family, or household purposes," OCGA § 10-1-392 (a) (3), defines "consumer acts or practices" as "acts or practices intended to encourage consumer transactions," OCGA § 10-1-392 (a) (2.1), and defines "trade" and "commerce" as

> the advertising, distribution, sale, lease, or offering for distribution, sale, or lease of any goods, services, or any property, tangible or intangible, real, personal, or mixed, or any other article, commodity, or thing of value wherever situate and shall include any trade or commerce directly or indirectly affecting the people of the state.

OCGA § 10-1-392 (a) (9).

The FBPA, however, does not provide a remedy for actions that do not and could not affect the general consuming public. *Morris v. Budd*, 226 Ga. App. 455, 457 (2) (486 SE2d 682) (1997). Further, proving a violation of the FBPA through unfair or deceptive acts or practices, within the meaning of the FBPA, does *not* require proof of *intentional* conduct on the defendants' part. *Regency Nissan v. Taylor*, 194 Ga. App. 645, 647 (2) (391 SE2d 467) (1990).

Consequently, suits brought under the FBPA "must serve the public interest and implement the purpose of the FBPA — the end to unfair or deceptive acts or practices in the public consumer marketplace." *Zeeman v. Black*, supra, 156 Ga. App. at 84.

> One may bring a private suit under the FBPA only if he is individually injured by the breach of a duty owed to the consuming public in general. [The FBPA] does not encompass suits based upon allegedly deceptive or unfair acts or practices which occur in an essentially private transaction. In those circumstances, even though the plaintiff may be a "consumer" with regard to the transaction, if the deceptive or unfair act or practice had or has no potential for harm to the general consuming public, the allegedly wrongful act of the defendant was not made in the context of the consumer marketplace. Unless it can be said that the defendant's actions had or has potential harm for the consumer public the act or practice cannot be said to have "impact" on the consumer marketplace and any act or practice which is outside that context, no matter how unfair or deceptive, is not directly regulated by the FBPA. When a "consumer" suffers damage as the result of an unfair or deceptive act or

> practice which had or has potential impact solely upon him and which is not and could not be a source of damage to any other member of the consuming public, there is no public interest to be served by proceeding under the FBPA, and the aggrieved party is relegated to pursuit of relief under other statutory or common law principles.

(Citation and punctuation omitted.) Id. at 84-85.

The actions Henderson complains of, i.e., Atlanta Cardiology Group's policy of allowing the WOCNs to perform treatment and the notations that Dr. Gandy authorized the treatment when he did not, were not actions introduced into the stream of commerce. *Pryor v. CCEC, Inc.*, 257 Ga. App. 450, 451 (1) (571 SE2d 454) (2002). The policy affected only the internal practices of the group, and the notations were in Dr. Henderson's private medical records and presumably other patients' private medical records. By their very nature, the contents of these records are intended to be private and confidential, and not revealed to the general public. See, e.g., OCGA §§ 24-9-40; 24-9-41. Further, the evidence does not show that either the Atlanta Cardiology Group's policy or the notations in the record were made known to the general consuming public. Compare *Campbell v. Beak*, 256 Ga. App. 493, 496 (1) (568 SE2d 801) (2002) (private transaction subject to the FBPA because it was based on a newspaper advertisement). Therefore, the policy and these notations had no effect on the general consuming public, and cannot constitute consumer acts or practices within the meaning of OCGA § 10-1-392 (a) (2.1) because neither the policy nor the notations were intended to encourage consumer transactions. For these reasons, Henderson's assertions that the notations were based on Atlanta Cardiology Group's general policy to authorize the WOCNs to perform treatment without specific orders from the physicians add nothing to her claim.

Accordingly, the trial court did not err by finding that Henderson's allegations did not occur "within the public consumer marketplace."

5. As we have found that Henderson cannot assert a FBPA claim under the facts of this case, we need not address her allegation that the trial court also erred by finding that her FBPA claim was barred by the two-year statute of limitation in OCGA § 10-1-401 (a) (1).

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur. Mikell, J., not participating.*

Decided November 22, 2004 —
Reconsideration denied December 9, 2004 —

*Kirschner & Venker, Andrew R. Kirschner, Thomas J. Venker, Michael W. McElroy*, for appellants.

*Allen & Weathington, Paul E. Weathington, Robert T. Strang III, Simuel F. Doster, Jr., Huff, Powell & Bailey, Jeffrey D. Braintwain, Insley & Race, Brynda R. Insley, Weinberg, Wheeler, Hudgins, Gunn & Dial, Ashley P. Nichols*, for appellees.