A05A1179. FIDELITY NATIONAL TITLE INSURANCE
COMPANY OF NEW YORK v. OHIC INSURANCE COMPANY.
A05A1180. OHIC INSURANCE COMPANY v. SNEAD et al.

(619 SE2d 704)

BLACKBURN, Presiding Judge.

These related cases, both of which are appeals from the same order of the trial court and which have been consolidated on appeal, stem from a declaratory judgment action filed by OHIC Insurance Company ("OHIC"), in which it maintained that it had no obligation, under a professional liability insurance policy (the "Policy"), to defend and indemnify its insured, Renee Snead, for claims asserted against her by Fidelity National Title Insurance Company of New York ("Fidelity"). In Case No. A05A1179, Fidelity appeals the denial of its motion for summary judgment, arguing that insurance coverage extended to the claims here as a matter of law. In Case No. A05A1180, OHIC appeals the denial of its motion for summary judgment, contending that the Policy expressly excluded all claims arising out of misappropriating client funds. Because we hold that the Policy excluded the misconduct at issue from coverage, we affirm the judgment in Case No. A05A1179 and reverse the judgment in Case No. A05A1180.

The record shows that Snead, an attorney who conducted real estate closings as part of her practice, applied for and received status as an approved attorney with Fidelity, a title insurance carrier. As an approved attorney, Snead issued title insurance on behalf of Fidelity and performed closings for lenders to whom Fidelity issued Insured Closing Services Protection ("ICSP") letters. The Policy Snead purchased from OHIC provided her with coverage for her professional acts and omissions, including title agency work.

In May 2002, at Snead's request, Fidelity issued ICSP letters to two lenders, Century Mortgage Corporation ("Century") and EquiFirst Corporation ("EquiFirst"). With respect to Century, a lien held by the seller's lender was not discharged after the closing, despite funds having been wired to Snead's trust account for this purpose. The EquiFirst closing did not take place, and the closing funds wired to Snead's trust account for the closing were not returned to EquiFirst. Both Century and EquiFirst made claims against Fidelity, and Fidelity paid each for its losses.

In July 2002, Fidelity sued Snead to recoup its losses, asserting theories of breach of fiduciary duty, breach of contract, fraud and deceit, fraudulent concealment, misrepresentation, conversion, and negligence. Evidence showed that the trust account in which the client funds had been wired was empty, with the lion's share of the funds having been stolen by an employee. Some of the funds may have paid for law firm expenses. The trust funds were misappropriated in

any event in that they were not used for the closings for which they were wired and were now gone; Snead denied participation in or knowledge of any wrongdoing.[1]

Based on Fidelity's complaint and the undisputed misappropriation, OHIC denied coverage on the ground that the claims arose out of conversion, misappropriation, or improper commingling of client funds. In December 2002, OHIC filed this declaratory judgment action, asserting that it did not owe Snead coverage. Fidelity countered that because of Snead's personal innocence, coverage of the claims was not excluded under the Policy. Both OHIC and Fidelity filed cross-motions for summary judgment, and the underlying suit was stayed pending adjudication of the declaratory judgment action.

Aside from other various grants and denials of portions of the motions for summary judgment, the trial court denied both parties' motions for summary judgment on the issue of whether the Policy excluded coverage for the claims against Snead. OHIC's and Fidelity's appeals of the trial court's resolution of their respective motions for summary judgment followed.

> In Georgia, the standards applicable to motions for summary judgment are announced in *Lau's Corp. v. Haskins*.[2] When a trial court rules on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions therefrom most favorably toward the party opposing the motion. On appeal of the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence.

(Punctuation omitted.) *Henderson v. Gandy*.[3]

Both OHIC and Fidelity assert that the trial court erred in holding that a question of fact existed as to whether coverage is excluded under the Policy. The trial court concluded

> that coverage under the policy issued by OHIC to Snead exists if Snead's claim is based upon or aris[es] out of conversion, misappropriation or improper commingling of client funds as long as she did not personally commit, participate in or fail to report any such acts or if Snead did

---

[1] Snead has since been disbarred for commingling and converting client funds. *In the Matter of Snead*, 276 Ga. 278 (577 SE2d 592) (2003).

[2] *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

[3] *Henderson v. Gandy*, 270 Ga. App. 827-828 (2) (608 SE2d 248) (2004).

not consent to violations by others of any law or regulation imposing criminal penalties.

The trial court denied both parties' motions for summary judgment on the ground that there was "a genuine issue of material fact as to whether Snead personally committed, participated in, failed to report or consented to any of the wrongful acts alleged in the underlying action." OHIC maintains that the trial court should have ruled, as a matter of law, that the claims were excluded, regardless of whether Snead personally participated in the wrongful acts.

In support of its argument, OHIC points to Exclusion 4 in Section C of the Policy, which provides that the Policy does not apply to "claims based upon or arising out of conversion, misappropriation, or improper commingling of client funds." OHIC argues that the plain and unambiguous language of Exclusion 4 explicitly excludes any claims arising out of conversion, misappropriation, or improper commingling of client funds regardless of whether Snead herself converted, misappropriated, or commingled the funds. We agree.

"Where the terms are clear and unambiguous, and capable of only one reasonable interpretation, the court is to look to the [insurance] contract alone to ascertain the parties' intent. The contract is to be considered as a whole and each provision is to be given effect and interpreted so as to harmonize with the others." (Citation omitted.) *Boardman Petroleum v. Federated Mut. Ins. Co.*[4] Furthermore,

> [a]n insurance company may fix the terms of its policies as it wishes, provided they are not contrary to law, and it may insure against certain risks and exclude others. Though exclusions in insurance policies are strictly construed against the insurer, one that is plain and unambiguous binds the parties to its terms and must be given effect, even if beneficial to the insurer and detrimental to the insured. We will not strain to extend coverage where none was contracted or intended.

(Punctuation and footnotes omitted.) *Manning v. USF&G Ins. Co.*[5]

Exclusion 4 unambiguously excludes coverage for all claims arising out of conversion, misappropriation, or improper commingling of client funds. Fidelity argues, however, that two other exclusions in Section C of the Policy relating to wrongful conduct conflict with such an absolute reading of Exclusion 4. Exclusion 14 of the

---

[4] *Boardman Petroleum v. Federated Mut. Ins. Co.*, 269 Ga. 326, 328 (498 SE2d 492) (1998).
[5] *Manning v. USF&G Ins. Co.*, 264 Ga. App. 102, 103 (589 SE2d 687) (2003).

Policy excludes coverage for "dishonest, fraudulent, criminal, malicious or intentionally wrongful acts, but coverage remains applicable for any of you who didn't personally commit or participate or fail to report any such acts." Exclusion 21 excludes from coverage "violations by you of any law or regulation imposing criminal penalties or liability arising out of the violation by others, with your consent, of any law or regulation imposing criminal penalties." Fidelity argues that while Exclusion 4 excludes coverage for *all* acts arising out of conversion, misappropriation or improper commingling of funds, Exclusions 14 and 21 indicate that, even if the claims arise out of such wrongful acts, Snead still has coverage under the Policy if she did not personally participate in any such wrongful acts or if she did not consent to criminal violations by others.

Fidelity misreads the policy. By its express language, Exclusion 4 clearly excludes coverage for all claims — with no exceptions — arising out of conversion, misappropriation, or improper commingling of client funds. The fact that the Policy contains additional exclusionary clauses that qualify or limit the exclusions for the more general misconduct described in those particular clauses does not diminish the fact that the exclusion for the misconduct described in Exclusion 4 is unqualified. These other separate clauses do not refer to or attempt in any way to limit the absolute language in Exclusion 4; they simply focus on a type of excluded misconduct that is broader than that described in Exclusion 4. As stated persuasively by the New Jersey Supreme Court:

> [E]ach exclusion is meant to be read with the insuring agreement, independently of every other exclusion. The exclusions should be read seriatim, not cumulatively. If any one exclusion applies there should be no coverage, regardless of inferences that might be argued on the basis of exceptions or qualifications contained in other exclusions. There is no instance in which an exclusion can properly be regarded as inconsistent with another exclusion, since they bear no relationship with one another.

(Punctuation omitted.) *Weedo v. Stone-E-Brick, Inc.*[6] A host of other jurisdictions also follow this principle. See, e.g., *Fresard v. Michigan Millers Mut. Ins. Co.*[7] (Michigan); *Kay Bee Builders v. Merchant's*

---

[6] *Weedo v. Stone-E-Brick, Inc.*, 405 A2d 788, 795 (III) (N.J. 1979).

[7] *Fresard v. Michigan Millers Mut. Ins. Co.*, 327 NW2d 286, 290 (III) (Mich. 1982).

*Mut. Ins. Co.*[8] (New York); *Dodson v. St. Paul Ins. Co.*[9] (Oklahoma); *John J. Curry & Son v. Harleysville Mut. Ins. Co.*[10] (Pennsylvania); *Nahan v. Pan American Grain Mfg. Co.*[11] (Puerto Rico); *Standard Fire Ins. Co. v. Chester-O'Donley & Assoc.*[12] (Tennessee); *Heaton v. Mountin*[13] (Wisconsin). Cf. *Qualls v. Country Mut. Ins. Co.*[14] (Illinois: exclusions each have an independent purpose); *Harrison Plumbing &c. v. New Hampshire Ins. Group*[15] (Washington: "Each exclusion refers to the risks insured against in the coverages and not to the other exclusions.").

Two professional malpractice cases of other jurisdictions involving realtors have addressed exclusionary clauses very similar to those here and have determined that the absolute exclusion regarding claims arising from misappropriation or conversion of funds clearly excluded coverage, despite language in another exclusionary clause that excluded coverage for dishonest, intentional, or criminal acts only if the insured was personally involved or knowledgeable. See *Bankers Multiple Line Ins. Co. v. Pierce;*[16] *PNA, L.L.C. v. Interstate Ins. Group.*[17] As stated in *PNA*,

> Nor does the existence of the "innocent insured" exception to Exclusion B [(the criminal exclusion)] make Exclusion C [(the misappropriation exclusion)] ambiguous or otherwise unenforceable. Quite simply, although [the insurance company] chose to include such an exception for the conduct encompassed in Exclusion B, it did not choose to do the same with Exclusion C. Accordingly, there are no "multiple interpretations" for Exclusion C.

*Id.* at *12 (II). See *Bankers Multiple Line Ins. Co.*, supra at 1008.

Moreover, these three exclusionary clauses are quite consistent with one another and make sense. As one might expect, the broader range of conduct described in Exclusions 14 and 21 (dishonest, criminal, or intentionally wrongful acts) is not excluded unless the

---

[8] *Kay Bee Builders v. Merchant's Mut. Ins. Co.*, 781 NYS2d 692, 693 (N.Y. App. Div. 2004).

[9] *Dodson v. St. Paul Ins. Co.*, 812 P2d 372, 377 (Okla. 1991).

[10] *John J. Curry & Son v. Harleysville Mut. Ins. Co.*, 11 Pa. D. & C. 4th 521, 527 (Pa. Commw. 1991).

[11] *Nahan v. Pan American Grain Mfg. Co.*, 62 FSupp.2d 419, 423-424 (I) (D. P.R. 1999).

[12] *Standard Fire Ins. Co. v. Chester-O'Donley & Assoc.*, 972 SW2d 1, 8 (V) (Tenn. App. 1998).

[13] *Heaton v. Mountin*, 607 NW2d 322, 325 (12) (Wis. App. 2000).

[14] *Qualls v. Country Mut. Ins. Co.*, 462 NE2d 1288, 1291 (Ill. App. 1984).

[15] *Harrison Plumbing &c. v. New Hampshire Ins. Group*, 681 P2d 875, 880 (Wash. App. 1984).

[16] *Bankers Multiple Line Ins. Co. v. Pierce*, 20 FSupp.2d 1004, 1008 (S.D. Miss. 1998).

[17] *PNA, L.L.C. v. Interstate Ins. Group*, 2003 U. S. Dist. LEXIS 11431 (II) (E.D. La. 2003).

insured personally participated in or consented to the conduct. The more specific conduct described in Exclusion 4 (stealing clients' money), which is a subset of the general conduct described in the other exclusionary clauses, is so reprehensible and far beyond the type of conduct normally covered by legal malpractice insurance that the insurance company understandably sought (and the insured understandably agreed to) its complete exclusion, with no exceptions. In other words, even though criminal or dishonest conduct generally is excluded only if the insured personally participated or consented to the conduct, that subset of criminal or dishonest misconduct which involves the theft or misappropriation of client funds is so abhorrent and beyond the pale of ethics that it is not covered under any circumstances.

Accordingly, we hold that the unambiguous and unqualified language of Exclusion 4 controls. It is undisputed that Fidelity's claims against Snead "arose out of" the conversion, misappropriation, and commingling of client funds, because the funds were not used for their intended purposes and because but for those actions, there could be no claim against Snead. See *Continental Cas. Co. v. HSI Financial Svcs.*[18] Accordingly, the claims are excluded under the Policy. Id. at 263.

This holding requires summary judgment in favor of OHIC on all claims and therefore moots the remaining enumerations of error in both appeals.

*Judgment affirmed in Case No. A05A1179. Judgment reversed in Case No. A05A1180. Miller and Bernes, JJ., concur.*

DECIDED JULY 29, 2005 —
RECONSIDERATION DENIED AUGUST 11, 2005.

*Holland & Knight, Gregory J. Digel, Sara L. Doyle, Ceasar D. Richbow*, for Fidelity National Title Insurance Company of New York and Snead et al.

*Strawinski & Goldberg, James S. Strawinski*, for OHIC Insurance Company.

---

[18] *Continental Cas. Co. v. HSI Financial Svcs.*, 266 Ga. 260, 262 (466 SE2d 4) (1996).