S05G0674. HENDERSON et al. v. GANDY et al.
(623 SE2d 465)

THOMPSON, Justice.

We granted certiorari to the Court of Appeals in *Henderson v. Gandy*, 270 Ga. App. 827 (608 SE2d 248) (2004), to consider whether Georgia's Fair Business Practices Act of 1975, OCGA § 10-1-390 et seq. ("FBPA"), the statutory scheme which protects consumers from unfair or deceptive trade practices, applies to a physician in connection with the provision of medical services. Under the circumstances of this case, we hold that plaintiffs failed to state a claim under the FBPA, and we affirm the judgment of the Court of Appeals, but for different reasons.

Appellant Claire M. Henderson's husband, Dr. Herbert Henderson, was admitted by appellee Dr. Winston Gandy, Jr., to Saint Joseph's Hospital for emergency cardiac by-pass surgery. During Dr. Henderson's post-operative convalescence at Saint Joseph's Hospital, he developed a sacral decubitus ulcer (pressure bed sore), which later became necrotic and ultimately resulted in his death several months later.[1] Ms. Henderson filed a medical malpractice action, both individually and as the representative of her husband's estate, naming Dr. Gandy, his professional corporation, Atlanta Cardiology Group, P.C. (collectively "Dr. Gandy"), and Saint Joseph's Hospital of Atlanta as defendants.

It was revealed during discovery that when Dr. Gandy identified the pressure ulcer, he ordered that the patient be treated by hospital nurses who specialize in wound ostomy care. It was also disclosed that these nurses noted in the patient's record that their continuing treatment of Dr. Henderson "was conducted pursuant to Dr. Gandy's verbal or telephone orders," when in fact, "Dr. Gandy did not verbally

---

[1] The facts are more fully developed in the opinion of the Court of Appeals, *Henderson v. Gandy*, supra.

order the specific treatment noted after his initial consultation with the [nurses]." *Henderson*, supra at 828 (3). Discovery also revealed that it was the policy of Atlanta Cardiology to allow the ostomy nurses to use their discretion in managing the wound treatment of Atlanta Cardiology's patients.

As a result of these discoveries, Henderson sought to amend her complaint to add claims for fraud, abandonment of care, and violation of the FBPA. Dr. Gandy and Atlanta Cardiology Group, P.C. sought and were granted partial summary judgment with regard to the FBPA claim.[2] The trial court determined that Ms. Henderson failed to demonstrate that the conduct of defendants allegedly giving rise to the FBPA claim "occurred within the public consumer marketplace."

The Court of Appeals affirmed, holding that the nurses' actions, although pursuant to the group's policy, did not fall within the stream of commerce required to maintain a FBPA action. *Henderson*, supra. We agree with the Court of Appeals that Ms. Henderson's FBPA count does not allege a sufficient cause of action; however, we decide the issue for other reasons which follow. See *Nat. Tax Funding v. Harpagon Co.*, 277 Ga. 41 (586 SE2d 235) (2003) (a judgment of a lower court may be affirmed so long as it is right for any reason).

A private party who suffers injury or damages as a result of "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce," may bring an action under the FBPA. OCGA § 10-1-393 (a). "Trade" and "commerce" are defined as

> the advertising, distribution, sale, lease, or offering for distribution, sale, or lease of any goods, services, or any property, tangible or intangible, real, personal, or mixed, or any other article, commodity, or thing of value wherever situate and shall include any trade or commerce directly or indirectly affecting the people of the state.

OCGA § 10-1-392 (a) (9). Thus, a claim under the FBPA requires proof not only of deceptive misconduct but also of conduct which affects the public interest.

> [W]hile the aggrieved party is given a private remedy under the statute, it is important to note that the stated intent of the FBPA is to protect the public from acts and practices

---

[2] The other counts of the complaint remain pending below.

which are injurious to consumers, not to provide an additional remedy for private wrongs which do not and could not affect the consuming public generally. [OCGA § 10-1-391.]

(Emphasis omitted.) *Zeeman v. Black,* 156 Ga. App. 82 (273 SE2d 910) (1980).

This Court has not had occasion to consider whether Georgia's FBPA applies to the medical professional. Other jurisdictions, however, which have addressed this issue in the context of their various consumer protection acts have widely held that "although the entrepreneurial or commercial aspects of the practice of medicine are covered as 'trade or commerce' under that state's consumer protection act, violations predicated on negligence or malpractice, whether medical or legal, are not covered because those claims address only competence." *Haynes v. Yale-New Haven Hosp.,* 243 Conn. 17, 35 (699 A2d 964) (1997), adopting rule set forth in *Quimby v. Fine,* 45 Wash. App. 175, 180 (724 P2d 403) (1986). The Michigan Court of Appeals applied a similar analysis, holding that

only allegations of unfair, unconscionable, or deceptive methods, acts or practices in the conduct of the entrepreneurial, commercial, or business aspect of a physician's practice may be brought under the [Michigan Consumer Protection Act]. Allegations that concern misconduct in the actual performance of medical services or the actual practice of medicine would be improper.

*Nelson v. Ho,* 222 Mich. App. 74, 83 (564 NW2d 482) (1997). "Only when physicians are engaging in the entrepreneurial, commercial, or business aspect of the practice of medicine are they engaged in 'trade or commerce' within the purview of the [Act]." Id. at 84. See also *Darviris v. Petros,* 442 Mass. 274, 278 (812 NE2d 1188) (2004) ("a claim for the negligent delivery of medical care, without more, does not qualify for redress under our consumer protection statute"; however, the statute may be applied to the business aspects of providing medical services); *Simmons v. Stephenson,* 84 SW3d 926, 928 (Ky. Ct. App. 2002) (where the allegations of the complaint did not relate to the entrepreneurial, commercial, or business aspect of defendant's practice of medicine, it stated no claim under the Kentucky consumer protection statute); *Dorn v. McTigue,* 121 FSupp.2d 17, 19 (D. D.C. 2000) (in order for the consumer protection statute to apply in the physician-patient context, the claimant must demonstrate a nexus between the claim and the entrepreneurial aspect of the medical practice); *Karlin v. IVF America,* 93 NY2d 282, 293 (712 NE2d 662) (1999) (plaintiffs who have alleged that promotional

materials and advertisements regarding in vitro fertilization contained misrepresentations that had the effect of "deceiving and misleading" have stated a claim under the consumer protection statute); *Gadson v. Newman*, 807 FSupp. 1412, 1416 (C.D. Ill. 1992) (in bringing a claim against a health care provider under the Illinois consumer fraud act, "[t]he distinction between the business aspects [of] medicine and the 'actual practice of medicine' or the non-business aspects of medicine is crucial").

We find the foregoing authority persuasive and we conclude that their reasoning is equally applicable to claims under the Georgia FBPA. Therefore, we adopt the rationale of the *Haynes* court, which held that

> the touchstone for a legally sufficient [FBPA] claim against a health care provider is an allegation that an entrepreneurial or business aspect of the provision of services aside from medical competence is implicated, or aside from medical malpractice based on the adequacy of staffing, training, equipment or support personnel. Medical malpractice claims recast as [FBPA] claims cannot form the basis for a [FBPA] violation. To hold otherwise would transform every claim for medical malpractice into a [FBPA] claim.

*Haynes*, 699 A2d at 973.[3]

Our ruling is further buttressed by our Legislature's stated intent that the FBPA "be interpreted and construed consistently with interpretations given by the Federal Trade Commission in the federal court pursuant to Section 5 (a) (1) of the Federal Trade Commission Act (15 U.S.C. § 45 (a) (1))." OCGA § 10-1-391 (b). See also *Zeeman*, supra at 83 (Federal Trade Commission Act "is expressly made the appropriate standard by which the purpose and intent of the Georgia [FBPA] is to be effectuated, implemented and construed"). Federal courts have determined that the Federal Trade Commission Act applies to the commercial aspects of the medical profession. *FTC v. Indiana Federation of Dentists*, 476 U. S. 447 (106 SC 2009, 90 LE2d 445) (1986) (policy among dentists to refuse to submit x-rays to dental insurers for use in benefits determination constituted an unfair method of competition under the Federal Trade Commission Act);

---

[3] We disagree with the Court of Appeals in *Henderson*, supra, insofar as that opinion could be read to exclude from the FBPA all conduct which "affected only the internal practices of the group" (Atlanta Cardiology) and were contained only in the patient's private medical records. Id. at 831. Under our holding above, an internal policy which is implemented to deceive the consumer and which furthers the business or commercial aspects of a physician's practice may be actionable under the FBPA.

*American Medical Assn. v. FTC,* 638 F2d 443, 448 (2nd Cir. 1980) (business aspects of the activities of the American Medical Association fall within the scope of the Federal Trade Commission Act), aff'd, 455 U. S. 676 (102 SC 1744, 71 LE2d 546) (1982).

We next examine the nature of Ms. Henderson's FBPA claim to determine whether the allegations against Dr. Gandy concern any entrepreneurial or business aspect of the medical practice so as to make the claim actionable under the FBPA. The conduct which forms the basis for Ms. Henderson's FBPA claim is that Dr. Gandy and Atlanta Cardiology wrongfully allowed the wound treatment nurses to manage the care of Dr. Henderson's sacral pressure sore, that the hospital records were falsified to show that the orders came directly from Dr. Gandy when they did not, and that it was the policy of Atlanta Cardiology to allow the wound treatment nurses to manage their patients' wound care. Because these allegations do not involve the entrepreneurial, commercial or business aspect of Dr. Gandy's practice, they do not constitute an action within the contemplation of the FBPA. Partial summary judgment was properly granted to Dr. Gandy with respect to Ms. Henderson's FBPA claim.

*Judgment affirmed. All the Justices concur, except Carley and Melton, JJ., who concur specially. Benham, J., not participating.*

CARLEY, Justice, concurring specially.

In this Fair Business Practices Act (FBPA) case, I agree that the judgment of the Court of Appeals affirming the grant of partial summary judgment in *Henderson v. Gandy,* 270 Ga. App. 827 (608 SE2d 248) (2004) is correct. However, I do not believe that there is any need to resort to the "right for any reason" principle in order to reach that result. In my opinion, the Court of Appeals was correct for the reason that it gave for its holding.

In footnote 3, the majority states that it

> disagree[s] with the Court of Appeals . . . insofar as that [Court's] opinion could be read to exclude from the FBPA all conduct which "affected only the internal practices of the group" (Atlanta Cardiology) and were contained only in the patient's private medical records. [Cit.]

Unlike the majority, I agree completely with that holding of the Court of Appeals, and I further submit that such holding is entirely consistent with the majority's rationale for disposing of this case. If, as the Court of Appeals recognized, conduct affects only the internal practices of a professional organization, it obviously does not affect anyone outside of that organization. If conduct does not affect anyone outside of a professional organization, then it does not affect a

consumer " 'and could not affect the consuming public generally.' [Cit.]" *Henderson v. Gandy*, supra at 829 (4) (quoting *Zeeman v. Black*, 156 Ga. App. 82-83 (273 SE2d 910) (1980)).

Footnote 3 further provides that, under the majority's holding, "an internal policy which is implemented to deceive the consumer and which furthers the business or commercial aspects of a physician's practice may be actionable under the FBPA." Of course, such an internal policy would not affect only the internal practices of the professional organization, but could instead affect the consuming public generally. Therefore, the majority's holding and the holding of the Court of Appeals are both right for the same reason. "The FBPA... does not provide a remedy for actions that do not and could not affect the general consuming public. [Cit.]" *Henderson v. Gandy*, supra at 830 (4). Accordingly, we should either summarily affirm the Court of Appeals or vacate the writ of certiorari as improvidently granted.

I am authorized to state that Justice Melton joins in this special concurrence.

DECIDED DECEMBER 1, 2005.

*Kirschner & Venker, Andrew R. Kirschner, Michael W. McElroy,* for appellants.
*Paul E. Weathington, Wayne D. Toth,* for appellees.