## A09A0563. TOOKES v. MURRAY.
### (678 SE2d 209)

JOHNSON, Presiding Judge.

Eddie James Tookes sued Dr. Joseph Murray for dental malpractice, breach of warranty, and violations of Georgia's Fair Business Practices Act ("FBPA").[1] In addition to damages for medical expenses and pain and suffering, Tookes sought punitive damages, attorney fees, and expenses of litigation. The trial court granted partial summary judgment in favor of Murray, and Tookes appeals. As discussed below, we find that the trial court properly granted summary judgment as to Tookes' claims for violations of the FBPA and punitive damages in excess of $250,000, but that it erred in finding that Tookes failed to present any clear and convincing evidence to support his demand for punitive damages up to $250,000.

On appeal, we review the trial court's grant of summary judgment to determine whether the evidence demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[2] When a defendant who does not bear the burden of proof at trial demonstrates that there is no evidence sufficient to create a jury issue on at least one essential element of the plaintiff's claim, the burden shifts to the plaintiff to point out specific evidence giving rise to a triable issue.[3]

When reviewing the grant of a motion for summary judgment, this court conducts a de novo review of the law and the evidence.[4] In addition, we give the nonmoving party the benefit of all reasonable

[1] OCGA § 10-1-390 et seq.
[2] OCGA § 9-11-56 (c).
[3] OCGA § 9-11-56 (e).
[4] *Desai v. Silver Dollar City*, 229 Ga. App. 160, 163 (1) (493 SE2d 540) (1997).

doubt, and the evidence and all inferences and conclusions therefrom must be construed most favorably toward the nonmoving party.[5] We do not resolve disputed facts, reconcile the issues, weigh the evidence, or determine its credibility, as those matters must be submitted to a jury for resolution.[6]

Here, the record shows that Tookes went to Murray's office on November 3, 2005 seeking dental implants for his missing teeth. Murray recommended that Tookes undergo a full mouth restoration, and, while at Murray's office, Tookes completed an application with Capital One, F.S.B. for a loan to finance the procedure. Capital One approved Tookes for an $18,300 loan to pay for the restoration, and Murray commenced work on November 8, 2005.

Despite Murray's projection that the restoration would take between two and three months, Murray's work required repairs and adjustments on at least ten occasions. Tookes filed a pro se complaint against Murray in magistrate court on January 13, 2006, in which he claimed that Murray's work was not satisfactory. Tookes withdrew the suit, however, and allowed Murray to continue working on his teeth. Finally, on August 24, 2006, Murray used permanent cement to set the teeth into Tookes' mouth in their current position.

Tookes continued to suffer discomfort and difficulty chewing, however, and sought the advice of another dentist. Dr. Ronald Goldstein examined Tookes on September 14, 2006 and found that at least 11 of the teeth placed by Murray had deficient margins, excess cement, or a loose bridge abutment. As a result of the "[o]bvious[ ]" defects in the work performed by Murray, which Goldstein found did not meet the standard of care, Goldstein concluded that both the upper and lower restorations needed to be completely replaced.

On October 17, 2006, Tookes sought the advice of a third dentist, Dr. Herman Donatelli. After examining Tookes, Donatelli also found numerous problems with marginal openings, excess cement, and loose abutments. Donatelli concluded that "most, if not all" of the work performed by Murray would require replacement, and that "[t]reatment to correct these issues would be lengthy and . . . at least two to three times the cost of the original work." Another dentist, Dr. Kevin Plummer, signed an affidavit in support of Tookes' claims, in which he concluded that Murray's work deviated from the standard of care in at least 19 respects.

1. Tookes contends that the trial court erred in granting summary judgment to Murray on his claim that Murray violated the

---

[5] *Anderson v. Mergenhagen*, 283 Ga. App. 546 (642 SE2d 105) (2007).
[6] *Mableton Parkway CVS v. Salter*, 273 Ga. App. 477, 478-479 (1) (615 SE2d 558) (2005).

FBPA. A person who suffers injury or damages as a result of "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce," may bring an action under the FBPA.[7] The Supreme Court of Georgia has held that "the touchstone for a legally sufficient FBPA claim against a health care provider is an allegation that an entrepreneurial or business aspect of the provision of services aside from medical competence is implicated. . . ."[8]

Here, Tookes bases his FBPA claim on allegations that Murray was complicit in arranging for his entry into a "deceptive financing arrangement" and that Murray failed to disclose treatment alternatives and associated risks prior to commencing the dental work. For the reasons described below, neither of these allegations supports a claim under the FBPA.

First, Tookes contends he was deceived by Murray into entering into an agreement with Capital One to borrow money at an annual interest rate of 19.9 percent when he believed he would pay at a rate of only 12.9 percent. Murray presented undisputed evidence, however, that he never spoke or had any involvement with Tookes about his financing of the dental work in general or his loan arrangement with Capital One in particular and that he did not receive any kickback or percentage of the interest charged by Capital One.

While Tookes claims that an unnamed member of Murray's staff told him that the loan would be at the lower interest rate, such parol evidence was inadmissible to contradict the clear written provisions of the financing authorization, which Tookes signed, and the promissory note referenced therein.[9] As a result, Tookes has failed to come forward with any evidence that Murray employed unfair or deceptive acts to coerce him into entering into the financing agreement with Capital One.

Tookes also asserts that Murray violated the FBPA by failing to inform him of treatment alternatives and risks associated with the restoration procedure. However, while Tookes presented evidence supporting his claim that Murray's performance of the restoration deviated from the applicable standard of care, he failed to produce any evidence that Murray was negligent in recommending that he undergo a restoration for his missing teeth or that Murray's failure to inform him of alternatives and risks resulted in any damage to

---

[7] OCGA § 10-1-393 (a).

[8] (Citation and punctuation omitted.) *Henderson v. Gandy*, 280 Ga. 95, 98 (623 SE2d 465) (2005).

[9] *Swyters v. Motorola Employees Credit Union*, 244 Ga. App. 356, 358 (1) (a) (535 SE2d 508) (2000).

him.[10] Therefore, pretermitting whether any failure by Murray to obtain informed consent was not strictly a failure in medical competence, but rather involved the entrepreneurial, commercial or business aspect of Murray's practice,[11] Tookes has failed to bring forward any evidence showing that Murray's omission resulted in his damages, as required by the FBPA. As a result, the trial court did not err in granting summary judgment to Murray on Tookes' FBPA claim.

2. Tookes also claims that the trial court erred in granting summary judgment to Murray on his claim for punitive damages. OCGA § 51-12-5.1 (b) provides that

> [p]unitive damages may be awarded only in such tort actions in which it is proven by clear and convincing evidence that the defendant's actions showed willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

Whether the tort was sufficiently aggravating to authorize punitive damages is generally a jury question, and a jury may award punitive damages even where the clear and convincing evidence only creates an inference of the defendant's conscious indifference to the consequences of his acts.[12]

Here, Tookes introduced evidence that his extended treatment by Murray was fraught with complications and that Murray was aware of the problems, did not know why the teeth were not fitting properly, and yet used permanent cement to set the teeth into position as they appeared on August 24, 2006. Tookes also presented evidence that Murray failed to perform diagnostic procedures that would have allowed him to correct the numerous and obvious defects in the placement of the teeth, as noted by the three dentists who reviewed his work. Finally, in his deposition testimony, Murray acknowledged many of the defects found in the restoration procedure he performed.

Based on this evidence, we conclude that a reasonable jury could find that Murray's treatment of Tookes demonstrated such an entire want of care that would raise the presumption of a conscious indifference to consequences and thereby justify an award of puni-

---

[10] Compare OCGA § 31-9-6.1 (d) (3) (requiring cause of action for failure to obtain informed consent be supported by a showing that "a reasonably prudent patient would have refused the . . . procedure . . . if such information had been disclosed.").

[11] See *Henderson*, supra.

[12] *Mr. Transmission, Inc. v. Thompson*, 173 Ga. App. 773, 775 (2) (328 SE2d 397) (1985).

tive damages, even under a "clear and convincing" standard of proof.[13] Given that the evidence, with all reasonable deductions and inferences therefrom, did not demand a particular verdict as to punitive damages, the trial court erred in granting summary judgment to Murray as to that claim.[14]

We also find, however, that Tookes failed to produce any evidence that Murray acted with the specific intent to cause harm, as required to support a claim for unlimited punitive damages.[15] We have previously held that specific intent to cause harm is not established by a showing of conscious indifference,[16] and nothing in the record, including Tookes' own affidavit, indicates that Murray intended to inflict any injuries upon Tookes. The trial court, therefore, correctly granted summary judgment to Murray on Tookes' claim for punitive damages exceeding $250,000.[17]

*Judgment affirmed in part and reversed in part. Ellington and Mikell, JJ., concur.*

DECIDED MAY 12, 2009 

*Deming, Parker, Hoffman, Green, Campbell & Daly, Frank F. Pape, Jr.*, for appellant.

*Carlock, Copeland & Stair, Wade K. Copeland, Ashley E. Sexton, Lee S. Atkinson*, for appellee.

---

[13] *Martin v. Williams*, 215 Ga. App. 649, 651 (2) (451 SE2d 822) (1994).

[14] See *Read v. Benedict*, 200 Ga. App. 4, 7 (2) (406 SE2d 488) (1991).

[15] OCGA § 51-12-5.1 (f)-(g).

[16] See *Aldworth Co. v. England*, 286 Ga. App. 1, 5 (2) (b) (648 SE2d 198) (2007).

[17] See *Viau v. Fred Dean, Inc.*, 203 Ga. App. 801, 805 (4) (418 SE2d 604) (1992).