## S94A0602. BOARD OF TAX ASSESSORS OF COLUMBUS, GEORGIA et al. v. TOM'S FOODS, INC.

(444 SE2d 771)

CARLEY, Justice.

OCGA § 48-5-18 (a) provides that:

*Except as otherwise provided in this Code section,* each tax commissioner and tax receiver shall open his books for the return of taxes on January 1 and *shall close his books on April 1 of each year.*

(Emphasis supplied.) OCGA § 48-5-18 (e) "otherwise provide[s]" that:

In each county having a population of not less than 165,000 nor more than 190,000 according to the United States decennial census of 1970 or any future such census, when the county is authorized by law or constitutional amendment to operate a joint tax receiving or tax assessing program with any other political subdivision, by resolution of the governing authority of any such county, the tax receiver's books for the return of taxes from property owners shall be opened on January 1 and *may be closed at a time prior to March 31 of each year but not sooner than March 1 of each year.* The date of closing for each year shall be established on or before January 10 in that year by resolution of the governing authority.

(Emphasis supplied.)

Acting pursuant to OCGA § 48-5-18 (e), the Council of Columbus, Georgia, as the governing authority for the consolidated governments of Muscogee County and the City of Columbus, passed a resolution on December 8, 1987 which established March 1, 1988 as the closing date for 1988 tax returns. Thereafter, appellant Board of Tax Assessors (Board) established that its administrative policy would be to consider any

return postmarked on or before March 1st[, 1988 and] received by March 5th[, 1988] . . . automatically acceptable and timely. Any return postmarked on or before March 1st[, 1988] and received after March 5th[, 1988] would be brought before the Board . . . for a decision.

In its 1988 ad valorem tax return, appellee Tom's Foods, Inc. applied for the freeport exemption on its inventory. See OCGA § 48-5-48.1. However, appellee's return was postmarked March 3, 1988 and

was received by the Board on March 4, 1988. The Board, finding that appellee's return was untimely, denied appellee the freeport exemption and, in addition to assessing taxes on appellee's unexempted inventory, imposed a late penalty. The Board of Equalization affirmed the Board's actions, and appellee appealed to the superior court. Cross-motions for summary judgment were filed. The superior court granted appellee's motion for summary judgment and denied the Board's motion on six separate grounds, one of those grounds being the unconstitutionality of OCGA § 48-5-18 (e). The Board appeals from the superior court's order.

Because a statute of this state was held to be unconstitutional, this court has exclusive jurisdiction over the instant appeal pursuant to Art. VI, Sec. VI, Par. II (1) of the Georgia Constitution of 1983. However, "[i]t is well established that this court will never decide a constitutional question if the decision of the case presented can be made upon other grounds. [Cit.]" *City of Columbus v. Stubbs*, 223 Ga. 765, 767 (3) (158 SE2d 392) (1967).

> Whenever the question of the constitutionality of a statute is properly presented in a case, this court has jurisdiction of the case even though the court determines that a decision upon such constitutional question is unnecessary to a solution of the case and makes no decision thereon.

*Wright v. State*, 216 Ga. 228 (1) (115 SE2d 331) (1960). Accordingly, the non-constitutional grounds of the superior court's order will be addressed first and, if any one of those grounds is meritorious, then none of the remaining grounds, including the constitutionality of OCGA § 48-5-18 (e), needs to be addressed.

1. As noted, OCGA § 48-5-18 (e) provides, in relevant part, that, in order to come within its scope, the county must have a population of a certain size and must also be "authorized *by law or constitutional amendment* to operate a joint tax receiving or tax assessing program with any other political subdivision. . . ." (Emphasis supplied.) The superior court found that Columbus, Georgia "is not authorized [to operate such a joint tax program] nor does it have [such a joint tax] program."

The Board does not contend that Columbus, Georgia is actually operating a joint tax program with any other political subdivision, but the Board does contend that Columbus, Georgia has the legal authority to do so pursuant to Art. IX, Sec. III, Par. I (a) of the Georgia Constitution of 1983. However, that constitutional provision merely provides general authority for counties to

contract for any period not exceeding 50 years with [another

political subdivision] . . . for joint services . . . or for the joint
or separate use of facilities or equipment. . . .

There is an obvious distinction between the grant of general authority
for counties merely "to contract" with other political subdivisions for
the provision of joint services or the joint use of facilities or equip-
ment and the grant of specific authority for counties actually "to op-
erate" a joint tax program with another political subdivision. More-
over, Art. IX, Sec. III, Par. I (a) applies generally to any and all
counties regardless of the size of their populations. If the requisite
authority "to operate" a joint tax program were deemed *already* to
extend to *any and all* counties pursuant to that *general* constitu-
tional provision, then the General Assembly's inclusion of the qualify-
ing language of OCGA § 48-5-18 (e) which requires that "the county"
be authorized to do so "by law or constitutional amendment" would
be superfluous. It is, therefore, apparent that OCGA § 48-5-18 (e)
contemplates the existence of a *specific* statute or constitutional
amendment which authorizes "the county . . . to operate a joint tax
receiving or tax assessing program with any other political subdivi-
sion. . . ." See Ga. L. 1966, p. 894 (pre-consolidation constitutional
amendment which authorized the General Assembly to enact a stat-
ute creating a joint board of tax assessors for Muscogee County and
the City of Columbus).

The Board further contends that Columbus, Georgia is brought
within the scope of OCGA § 48-5-18 (e) by the provisions of its for-
mer charter which was in effect at the relevant times. Ga. L. 1971,
Extra. Sess., p. 2007. In this regard, the Board cites § 1-104 of the
charter, which provides that the creation of Columbus, Georgia does
not

affect the status of any incorporated municipality located
within Muscogee County other than the City of Columbus,
and the status or relationship that such incorporated munici-
palities bear to Muscogee County and the City of Columbus
prior to the adoption of [the former] Charter shall continue
to the same extent with the consolidated government.

Ga. L. 1971, Extra. Sess., pp. 2007, 2014. Under OCGA § 48-5-18 (e),
however, the post-consolidation continued existence of any incorpo-
rated municipality in Muscogee County other than the City of Colum-
bus is irrelevant unless Columbus, Georgia is otherwise "authorized
by law or constitutional amendment to operate a joint tax receiving or
tax assessing program with" those other incorporated municipalities.
Section 1-104 of the charter is not a specific law which authorizes Co-
lumbus, Georgia "to operate" a joint taxing program with any incor-

porated municipality in Muscogee County.

The Board further cites § 8-205 of the charter as the legal authority for Columbus, Georgia "to operate" such a joint program with the incorporated municipalities in Muscogee County or other political subdivisions. According to its title, however, that provision of the charter relates only to the authority of Columbus, Georgia "to deal with federal and state agencies," not with other political subdivisions. Ga. L. 1971, Extra. Sess., pp. 2007, 2104. Moreover, that provision of the charter provides, in relevant part, only that Columbus, Georgia

> shall have the power and authority to participate in, cooperate in and take all necessary action with respect to any and all projects, programs and undertakings of any nature whatsoever *authorized by any statute* . . . of the United States or the State of Georgia. . . .

(Emphasis supplied.) Ga. L. 1971, Extra. Sess., pp. 2007, 2104. Thus, this provision of the charter does not constitute independent authority for Columbus, Georgia "to operate" any program whatsoever. It merely confers upon Columbus, Georgia the general authority to take part in any program which is otherwise authorized by federal or state statute. In the absence of any federal or state statute specifically authorizing Columbus, Georgia "to operate a joint tax receiving or tax assessing program with any other political subdivision," § 8-205 of the charter is inapplicable and would not satisfy the requirements of OCGA § 48-5-18 (e).

In the superior court and likewise on appeal, the Board has relied solely upon Art. XI, Sec. III, Par. I (a) of the Constitution of Georgia of 1983 and §§ 1-104 and 8-205 of the charter to show that Columbus, Georgia is a county which is otherwise within the scope of OCGA § 48-5-18 (e) and that the Board was, therefore, not required by OCGA § 48-5-18 (a) to leave its books open until April 1, 1988. As discussed above, neither that constitutional provision nor those provisions of the charter satisfy the requirement of OCGA § 48-5-18 (e) that Columbus, Georgia be "authorized by law or constitutional amendment to operate a joint tax receiving or tax assessing program with any other political subdivision. . . ." It follows that, as to this ground of appellee's motion, the superior court correctly granted summary judgment in favor of appellee and denied summary judgment in favor of the Board. The record before the superior court and this court compels the holding that appellee's return was timely, because Columbus, Georgia has not been shown to be a county which is otherwise within the scope of OCGA § 48-5-18 (e) and, pursuant to OCGA § 48-5-18 (a), the Board was, therefore, unauthorized to close its books any earlier than April 1, 1988.

2. Since the superior court's order must be affirmed on a meritorious non-constitutional ground, the remaining grounds of the superior court's order will not be addressed.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 27, 1994.

*Eugene H. Polleys, Jr.,* for appellants.
*Hatcher, Stubbs, Land, Hollis & Rothschild, Albert W. Stubbs, James E. Humes II,* for appellee.