## S09A2056. DAVIS v. DUNN.
### (690 SE2d 389)

MELTON, Justice.

In this election contest case, Joan P. Davis appeals from the Superior Court of Cobb County's award of attorney fees to Sharon Dunn, the Director of the Cobb County Board of Elections and Registration.[1] For the reasons that follow, we affirm.

The record reveals that, on November 13, 2008, Davis filed a Petition to Contest the November 4, 2008 election of Cobb County Superior Court Judge C. LaTain Kell, contending only that "[t]he grounds for contest are error in counting the vote and declaring the result of the elections, where such error would change the result." See OCGA § 21-2-522 (4) ("A result of a primary or election may be contested . . . [f]or any error in counting the votes or declaring the result of the primary or election, if such error would change the result."). Judge Kell won the election by 24,462 votes, and Davis did not specify in her petition, as required by OCGA § 21-2-524 (a) (8), any factual basis for her belief that a counting error occurred that would have changed the election results. See *Ellis v. Johnson*, 263 Ga. 514, 516 (1) (435 SE2d 923) (1993) (a petitioner in an election contest is "required by § 21-2-524 (a) (8) to allege and prove some factual basis or 'cause' for [his or her] belief that an error in counting occurred . . . [because] [s]ection 21-2-524 (a) (8) prohibits the contestant from merely speculating or guessing as to such a cause").

Despite the deficiency on the face of her petition, at a December 4, 2008 hearing on her petition, Davis contended that, according to her reading of the election results posted on the Cobb County Board of Elections web site, the number of votes counted for various districts exceeded the actual number of registered voters in those districts. She also contended that, because the web site did not properly break down the number of cast absentee ballots by precinct, Cobb County could have easily manipulated the vote results by having failed to add absentee ballots to the returns received from the precincts from which the ballots were cast. See OCGA § 21-2-493 (j) ("The superintendent shall see that the votes shown by each absentee ballot are added to the return received from the precinct of the elector casting such ballot"). However, in reality, the web site printout relied upon by Davis did not show that more votes were counted than the number of registered voters that existed; and the manner in which the web site broke down the number of absentee voters did not reflect, or have anything to do with, any alleged failure

---

[1] This Court dismissed as moot Davis' other claims relating to the election contest at issue by order dated October 27, 2009.

to add absentee ballots to the returns received from various precincts. Indeed, OCGA § 21-2-493 (j) does not dictate the manner in which absentee ballots are to be *displayed* on a web site, and the manner in which absentee ballots are displayed on a web site has absolutely no bearing on any action that has or has not been taken by the elections superintendent with respect to adding absentee ballots to the returns received from the relevant precincts.[2] Moreover, the trial court specifically found that the election results reported on the web site reflected no discrepancy between the number of votes cast and the number of registered voters, and further found that Davis had left "the court to guess as to how [any] alleged error [in the display of absentee ballots on the web site] might close the 24,462 vote gap between Davis and her opponent by even one vote." The trial court then dismissed Davis' petition and awarded Dunn attorney fees pursuant to OCGA § 9-15-14 (a).

Under OCGA § 9-15-14 (a),

> reasonable and necessary attorney's fees and expenses of litigation shall be awarded to any party against whom another party has asserted a claim, defense, or other position with respect to which there existed such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim, defense, or other position.

In election cases, this Court has made clear that it "will affirm a lower court ruling made under OCGA § 9-15-14 (a) if there is 'any evidence' to support it." (Citation omitted.) *Kendall v. Delaney*, 283 Ga. 34, 36 (656 SE2d 812) (2008) (Board of Education election contest). Here, there was evidence to support the trial court's conclusion that Davis asserted claims that exhibited "such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the[m]." OCGA § 9-15-14 (a). Specifically, instead of presenting any factual basis or evidence to support any claim that would cast doubt on the counting of even a single vote in the November election, Davis

---

[2] In this regard, the portion of the transcript cited by the dissent in its footnote 5 lends no support to the assertion that Davis presented evidence to support any claim under OCGA § 21-2-493 (j). When viewed in its proper context, it becomes clear that the election official at the hearing was merely testifying about where, on the *web site*, absentee ballot information was being *displayed* "for reporting purposes," and not about information that had anything to do with any actions that were or were not taken by the superintendent with respect to any requirements under OCGA § 21-2-493 (j). In fact, as Davis continued to question the official about the manner in which the information was displayed on the web site, the official testified: "Basically, [Davis,] you are saying that you don't like the way that this report works."

instead presented to the trial court web site information that had nothing to do with any miscounting of votes or the mishandling of any absentee ballots. Under these circumstances, we conclude that evidence supported the trial court's conclusion that "it could not be reasonably believed that a court would accept [Davis'] claim[s]." Id. Compare *Kendall*, supra (reversing award of attorney fees pursuant to OCGA § 9-15-14 (a) where losing party presented actual evidence that a sufficient number of ballots had been handled by persons not authorized to do so such that the result of the election could have been affected).[3] The trial court did not err in awarding attorney fees to Dunn.

Contrary to the dissent's assertion, *Ellis v. Johnson*, supra, does not stand for the proposition that any time a party "raise[s] a statutory interpretation issue that ha[s] not previously been analyzed by any court," an award of attorney fees pursuant to OCGA § 9-15-14 is unwarranted. In *Ellis*, two losing candidates (one for Sheriff of Walker County and one for Walker County Board of Education) and a voter sued the elections superintendent, alleging that a malfunction of an optical scanning machine may have created an error in the counting of the votes. Although the petitioners admitted that they had no evidence of a machine actually malfunctioning, they argued that, under OCGA § 21-2-524 (c), they were not required to come forward with any evidence in order to be entitled to a recount. OCGA § 21-2-524 (c), which had not been interpreted by this Court prior to *Ellis*, states that

> [w]hen an error in the counting of votes is alleged as a ground of contest, it is sufficient for the contestant to state generally that he or she believes that error was committed in the counting of the votes cast for the filling of the nomination or office in dispute, or for or against the question in dispute, in one or more specified precincts; *and it shall not be necessary for the contestant to offer evidence to substantiate such allegation.*

---

[3] The dissent argues that Davis could have amended her petition to assert a claim under OCGA § 21-2-522 (1) ("primary or election may be contested [for] [m]isconduct, fraud, or irregularity by any primary or election official or officials sufficient to change or place in doubt the result"). However, Davis never amended her petition as required by OCGA § 21-2-524 (g) to assert such a claim. See id. ("any petition . . . may be amended *with leave of the court* so as to include the specification of additional grounds of contest") (emphasis supplied). Furthermore, as stated above, Davis failed to present *any* factual basis or evidence to support an allegation of misconduct by election officials that would have affected the counting of even a single vote to support the claims that she *did* raise, let alone evidence of "[m]isconduct, fraud, or irregularity by any primary or election official or officials sufficient to change or place in doubt the result" as would have been required under an OCGA § 21-2-522 (1) claim that she did *not* even raise.

(Emphasis supplied.) OCGA § 21-2-524 (c).

The superintendent responded that, pursuant to OCGA § 21-2-524 (a) (8), the petitioners could not simply rely on speculation in support of their claims, but had to "offer facts as to why they believed an error in counting had occurred." *Ellis*, supra, 263 Ga. at 514. See also OCGA § 21-2-524 (a) (8) ("A petition to contest the result of a primary or election . . . shall allege[, among other things,] [s]uch other facts as are necessary to provide a full, particular, and explicit statement of the cause of contest."). In light of the unresolved conflict between these two potentially competing statutory provisions (OCGA § 21-2-524 (a) (8) and 21-2-524 (c)), this Court harmonized the two Code sections by explaining that

> meaning can be given to § 21-2-524 (c) by construing it as focusing only on the contestant's burden with respect to the ultimate fact of whether an error in counting actually occurred. Subsection (c) relieves a contestant from the burden of alleging and proving that an actual error in counting occurred, as that burden would be difficult if not impossible to carry without the requested recount. The contestant need only state generally his or her belief that an error did in fact occur. On the other hand, meaning can be given to § 21-2-524 (a) (8), in the context of an alleged error in counting, by construing it to require an underlying factual basis or "cause" that has led the contestant to state generally his or her belief in the ultimate fact that an actual error in counting occurred. Section 21-2-524 (a) (8) prohibits the contestant from merely speculating or guessing as to such a cause.

Id. at 515-516 (1).

This Court then affirmed the trial court's judgment in favor of the superintendent, holding that the petitioners had not met their burden under OCGA § 21-2-524 (a) (8) "to allege and prove some factual basis or 'cause' for their belief that an error in counting occurred." *Ellis*, supra, 263 at 516. However, we reversed the trial court's award of attorney fees to the superintendent pursuant to OCGA § 9-15-14

> because the appellants' contest was based on their interpretation of § 21-2-524 (c), because that Code section had never been interpreted by any court, and because the language of subsection (c) provided arguable support for the appellants' contention [that they did not have to offer evidence to substantiate their allegations].

586

Id. at 517 (2).

Thus, in *Ellis*, this Court did not reverse the award of attorney fees simply because OCGA § 21-2-524 (c) had not been interpreted up to that point, but because the petitioners had presented an interpretation of the statute that provided support for their claim in a manner that, consistent with the requirements of OCGA § 9-15-14, did not exhibit "such a complete absence of any justiciable issue of law or fact that it could not be reasonably believed that a court would accept the asserted claim." OCGA § 9-15-14 (a). Since this Court's decision in *Ellis*, it has been clear that (1) an award of attorney fees pursuant to OCGA § 9-15-14 is permissible in an election contest (see *Kendall*, supra),[4] and (2) a petitioner in an election contest may not rely on mere speculation or guesswork when it comes to asserting a "cause" for their belief that a counting error has occurred. Moreover, *Ellis* did not change our "any evidence" standard of review (which is undoubtedly a low threshold to be met) with respect to upholding an award of attorney fees on appeal. See *Kendall*, supra.

Here, despite citing to OCGA § 21-2-493 (j), Davis presented no underlying factual basis, but only speculation, to support her belief that a counting error had occurred. She did not present any interpretation of the plain language of OCGA § 21-2-493 (j) that would have provided even "arguable support for [her] contention[s]" (see *Ellis*, supra, 263 Ga. at 517 (2)), and the evidence that she presented to the trial court (1) bore no relationship to any of the requirements set forth in OCGA § 21-2-493 (j), and (2) did not place in doubt a single vote of the 24,462 votes that she was missing in order to catch up to Judge Kell. Indeed, contrary to the dissent's conclusion that this is *not* the type of case where an award of attorney's fees pursuant to OCGA § 9-15-14 should be upheld on appeal, this is *exactly* the type of case where the "any evidence"

---

[4] In this connection, our decision today is not a "marked departure from our previous election contest decisions in which we have unequivocally decided not to impose attorney fees." In those prior cases, the facts simply did not warrant an award of attorney fees. See *Ellis*, supra; *Kendall*, supra. This is not to say that attorney fees are *not* available under facts that would warrant an award of such fees pursuant to OCGA § 9-15-14. Indeed, the dissent does not provide any legal basis or explanation for its conclusion that attorney fees pursuant to OCGA § 9-15-14 should not be available in a "judicial election contest." And, in light of our case law and the plain language of OCGA § 9-15-14 allowing for an award of attorney fees in an election contest, the dissent would be hard pressed to do so. In order to make some sort of exception prohibiting the award of attorney fees pursuant to OCGA § 9-15-14 in "judicial election contests," this Court would have to ignore our prior case law holding that OCGA § 9-15-14 is applicable to election contest cases, and would have to graft a legislative exception onto OCGA § 9-15-14 that simply does not exist. This Court is forbidden from engaging in such an exercise. *State v. Fielden*, 280 Ga. 444, 448 (629 SE2d 252) (2006) ("[U]nder our system of separation of powers this Court does not have the authority to rewrite statutes.").

standard has been met, and where it is this Court's duty to affirm the award of attorney fees on appeal.

*Judgment affirmed. All the Justices concur, except Hunstein, C. J., and Benham, J., who dissent.*

BENHAM, Justice, dissenting.

I respectfully disagree with the majority opinion's decision to affirm the trial court's award of OCGA § 9-15-14 (a) attorney fees in this contested judicial election. At the petition hearing, Davis presented evidence that an irregularity had occurred when the county election officials failed to adhere to OCGA § 21-2-493 (j). That statute specifically requires the superintendent of elections to add each absentee ballot to the election return of the elector's precinct. In this case, Davis argued to the trial court that she believed that election officials failed to comply with OCGA § 21-2-493 (j) when they failed to report absentee ballots in the precinct of the elector. When Davis cross-examined the election official, the election official confirmed that absentee ballots were reported in an artificial absentee precinct rather than reported in the precinct of the elector as indicated by statute.[5]

Coupled with her concerns about compliance with OCGA § 21-2-493 (j), Davis, who is an African-American female, raised concerns about the impact of the county's actions on African-American voters. Anecdotally, a large number of people who voted early in the November 2008 election cycle were African-American and, therefore, cast absentee ballots. Due to the election officials' failure to report the absentee votes in the electors' actual precincts, Davis opined that it was difficult to determine whether any disparities had occurred for minorities who cast their ballots early.

Although Davis's initial petition was based generally on OCGA § 21-2-522 (5), which provides a candidate can contest the election for "any other cause," Davis was entitled to contest the election under OCGA § 21-2-522 (1) for an "irregularity by any

---

[5] The following colloquy transpired between Davis and the county election official on cross-examination:

Q. On page 88 for Davis and [her opponent], the 51,223 people who voted absentee, are those results reported back to the individual precincts?

A. No. They are reported in the absentee precinct.

Q. Well, if we indicate that the precincts are where they live, which one is that one?

A. Absentee is set up, for reporting purposes, as a separate precinct. Those are our directions from the Secretary of State's Office.

Q. I just want to make sure I understand. The people who are voting absentee, their votes are not sent back to their individual precincts; they are put into an absentee precinct?

A. Right.

primary or election official or officials sufficient to change or *place doubt in the result.*" OCGA § 21-2-522 (emphasis supplied). The fact that Davis did not raise the irregularity issue in her petition upon filing was not necessarily a bar to moving forward with her petition on an amended basis (see OCGA § 21-2-524 (g)). Because Davis raised the issue at the hearing and because the trial court actually considered and *analyzed* the effect of any alleged irregularity in its dismissal order, I cannot agree with the majority's conclusion that Davis failed to present any justiciable issue warranting the award of attorney fees.

In *Ellis v. Johnson*, 263 Ga. 514 (2) (435 SE2d 923) (1993), which the trial court relied upon to dismiss Davis's petition, this Court reversed the award of attorney fees imposed on the non-prevailing contestant because the contestant raised a statutory interpretation issue that had not previously been analyzed by any court. Likewise, there appear to be no cases interpreting how a county meets the requirements of OCGA § 21-2-493 (j) or any investigation of how the county's election practices may impact minority voters. Inasmuch as Davis called upon the trial court to determine whether the county complied with OCGA § 21-2-493 (j) and the effect of any noncompliance, there was a valid justiciable issue in play. Id.

As far as I am aware, this Court has never approved an award of OCGA § 9-15-14 attorney fees in a judicial election contest and I see no reason to do so today. First, the statutory scheme for election contests already contemplates the allocation of costs when one party prevails over the other (see OCGA § 21-2-529) and I believe that provision is sufficient to deter any untoward abuse by contestants in election cases without this Court opening up the imposition of attorney fees under OCGA § 9-15-14. More important, this decision is a marked departure from our previous election contest decisions in which we have unequivocally decided not to impose attorney fees. See *Kendall v. Delaney*, 283 Ga. 34 (656 SE2d 812) (2008) (board of education election contest); *Ellis v. Johnson*, supra, 263 Ga. at 516 (county election contest for sheriff and board of education). Since we did not impose attorney fees in the non-judicial municipal elections in *Kendall* and *Ellis*, supra, we should not impose them for the first time in a properly contested judicial election.

Today's decision will have a significant chilling effect in ways I am sure the majority does not intend. It has only been in the last quarter of a century in which a significant number of minorities and females have been able to obtain positions in the judiciary by appointment or election. Indeed, it was just a little over 25 years ago that I became the first African-American judge appointed to an appellate court in this state. I know firsthand the rigors of running

for elected office and so I feel strongly that imposing attorney fees in such contests will dissuade qualified and capable persons from running for office in the first place, particularly if they would be challenging a sitting judge. Such a harsh and unnecessary sanction will also stifle any valid post-election challenges to voting irregularities which unfairly impact contestants and citizens. Instead of imparting decisions that discourage citizens from becoming active in public life, especially as judges, we must encourage these pursuits.

Accordingly, I would reverse the trial court's award of attorney fees.

I am authorized to state that Chief Justice Hunstein joins in this dissent.

## DECIDED MARCH 1, 2010.

*Joan P. Davis*, for appellant.
*Haynie, Litchfield & Crane, Douglas R. Haynie, Gregg E. Litchfield, Daniel W. White*, for appellee.