S10A0397. STATE OF GEORGIA ex rel. JOSEPH B. DOYLE v. FREDERICK J. HANNA & ASSOCIATES, P.C.
(695 SE2d 612)

CARLEY, Presiding Justice.

Joseph B. Doyle is the Administrator of the Fair Business Practices Act of 1975 (FBPA), OCGA § 10-1-390 et seq., which he enforces through the Governor's Office of Consumer Affairs (OCA). After receiving complaints alleging abusive debt collection practices, the Administrator issued an investigative demand to Frederick J. Hanna & Associates, P.C. (Appellee), which is a law firm that seeks to

---

collect debts on behalf of creditors.

When Appellee refused to comply with the demand, Appellant State of Georgia ex rel. Doyle filed an application for an order compelling compliance therewith. The trial court denied the application, concluding that, because Appellee's day-to-day operation directly involves the practice of law, and because the investigative demand directly impacts Appellee's practice of law, that demand is an attempt by Appellant and the OCA to regulate the practice of law and constitutes an impermissible interference by the executive branch into the exclusive jurisdiction of this Court in violation of the separation of powers doctrine. Appellant appeals from this order.

1. Appellant contends that it was unnecessary for the trial court to reach the merits of Appellee's arguments that Appellant was not authorized to regulate the practice of law. Citing cases such as *Securities and Exchange Comm. v. Brigadoon Scotch Distrib. Co.*, 480 F2d 1047, 1052-1053 (II) (2nd Cir. 1973) and *BankWest v. Oxendine*, 266 Ga. App. 771, 774 (1) (598 SE2d 343) (2004) (citing *Brigadoon*), Appellant argues that an agency's investigative authority is broader than its enforcement authority and that it may investigate simply to determine whether certain activities come within its regulatory authority.

However, the FBPA specifically provides that any person to whom an investigative demand or subpoena is issued may object to it "on grounds that it fails to comply with [the FBPA] or upon any constitutional or other legal right or privilege of such person." OCGA § 10-1-404 (b). Therefore, "the kind of [investigative] authority that existed in the cases cited by [Appellant] is lacking, and thus the policy against interfering with administrative investigations must give way." *Federal Trade Comm. v. Miller*, 549 F2d 452, 462 (III) (7th Cir. 1977) (distinguishing *Brigadoon*). Accordingly, the distinction drawn by the dissent (p. 298) between investigation under the FBPA and the availability of its remedies is not viable under Georgia law, and we now turn to the merits.

2. Some state courts have interpreted consumer protection statutes "as providing an exemption for conduct within the actual practice of law or medicine, but not for commercial or entrepreneurial activities of a physician or an attorney." Lori J. Parker, *Proof of a Claim Involving Alleged Violation of State Consumer Protection or Similar Statute Against Physician or Attorney*, 79 AmJur Proof of Facts 3d 199, § 1 (2004). See also Mary Dee Pridgen, *Consumer Protection and the Law* § 4:36. In 2005, we joined those courts with respect to the practice of medicine, concluding

that their reasoning is equally applicable to claims under the Georgia FBPA. . . . "[T]he touchstone for a legally

sufficient (FBPA) claim against a health care provider is an allegation that an entrepreneurial or business aspect of the provision of services aside from medical competence is implicated, or aside from medical malpractice based on the adequacy of staffing, training, equipment or support personnel. . . ." [Cit.]

*Henderson v. Gandy*, 280 Ga. 95, 98 (623 SE2d 465) (2005). Like comparable statutes in other jurisdictions, the FBPA

contains no language expressly excluding or including the legal profession within its ambit. Despite the absence of such language, there appears to be little dispute among the decisions addressing this issue that consumer protection statutes do not apply to claims arising out of the "actual practice of law."

*Cripe v. Leiter*, 703 NE2d 100, 105 (Ill. 1998). See also *Beyers v. Richmond*, 937 A2d 1082, 1086 (a) (Pa. 2007).

The foreign case on which Appellant most heavily relies is *Heslin v. Conn. Law Clinic of Trantolo and Trantolo*, 461 A2d 938 (Conn. 1983). However, that case was subsequently distinguished by *Haynes v. Yale-New Haven Hosp.*, 699 A2d 964, 973 (II) (Conn. 1997). *Haynes* is the very case on which we primarily relied and the rationale of which we expressly adopted in *Henderson v. Gandy*, supra at 97, 98. In accordance therewith, we hold that,

[a]lthough physicians and other health care providers are subject to [the FBPA], only the entrepreneurial or commercial aspects of the profession are covered, just as only the entrepreneurial aspects of the practice of law are covered by [the FBPA]. . . . "[I]t is important not to 'interfere with the attorney's primary duty of robust representation of the interests of his or her client.' [Cit.] . . . The noncommercial aspects of lawyering — that is, the representation of the client in a legal capacity — should be excluded for public policy reasons. [Cit.]" [Cit.]

*Haynes v. Yale-New Haven Hosp.*, supra at 972-973 (II).

Moreover, " 'no statute is controlling as to the civil regulation of the practice of law in this state. Only this Court has the inherent power to govern the practice of law in Georgia.' " *GRECAA v. Omni Title Services*, 277 Ga. 312, 313 (2) (588 SE2d 709) (2003). In the exercise of that power, we administer the Rules of Professional

Conduct, which constitute

> a comprehensive regulatory scheme governing attorney conduct. . . . [The FBPA does] not . . . specify that it intended the Act's provisions to apply to the conduct of attorneys in relation to their clients. Given this [C]ourt's role in that arena, we find that, had the legislature intended the Act to apply in this manner, it would have stated that intention with specificity. [Cit.] Absent a clear indication by the legislature, we will not conclude that the legislature intended to regulate attorney-client relationships through the [FBPA].

*Cripe v. Leiter*, supra at 105-106. Compare OCGA § 10-1-427 (explicitly regulating the false advertising of legal services).

3. The Court of Appeals has held that the FBPA is applicable to the collection of a debt by a collection agency. *1st Nationwide Collection Agency v. Werner*, 288 Ga. App. 457, 458 (1) (654 SE2d 428) (2007). However, the trial court was authorized to find that Appellee is a law firm whose day-to-day operations require licensed, practicing attorneys. The issue in this case is not whether the FBPA applies to a law firm's own commercial or entrepreneurial activity when, for example, it attempts to collect fees from a client. Instead, this case involves Appellee's

> attempt[s] to collect moneys that were owed to [its] clients. In doing so [it was] rendering a professional service that is often carried out by law firms or attorneys. . . . [Indeed,] [d]ebt collection . . . is a necessary part of the practice of debtor-creditor law. Because [Appellee was] engaged in that very practice here, [it was] rendering a professional legal service. Accordingly, [its] acts fall within the learned profession exemption.

*Reid v. Ayers*, 531 SE2d 231, 235-236 (N.C. App. 2000) (although the consumer protection statute there contained a learned profession exemption in general terms, the court noted, consistent with *Henderson* and other jurisdictions, that the exemption would not apply to entrepreneurial aspects of legal practice, citing a case relied on by *Cripe* from a jurisdiction without any express exemption for learned professionals). The nature of such representation of clients in a legal capacity is not destroyed by the utilization of " 'staffing, training, equipment or support personnel.' " *Henderson v. Gandy*, supra at 98. Indeed, the manner in which such support is used and managed in the representation of clients is part of the actual practice of law and,

therefore, does not involve the entrepreneurial or commercial aspects of professional practice within the contemplation of the FBPA. See *Henderson v. Gandy*, supra at 99.

Accordingly, we hold that the representation of clients by a law firm does not come within the FBPA even if certain services were provided by non-lawyers within the firm and could have been offered by a company without any attorneys. If Appellee's employees engaged in wrongful conduct against debtors, the remedy must be found outside the FBPA. See *Heintz v. Jenkins*, 514 U. S. 291 (115 SC 1489, 131 LE2d 395) (1995) (federal Fair Debt Collection Practices Act (FDCPA) applies even to lawyers regularly engaged in collecting consumer debt through litigation); Rules of Professional Conduct 5.3 (responsibilities regarding non-lawyer assistants), 5.7 (responsibilities regarding law-related services). Like the dissent, we recognize that the debt collection practices of attorneys "would be subject to investigation by the Federal Trade Commission, the regulatory entity responsible for enforcement of the FDCPA. [Cit.]" (Dissent, p. 300) As a result, the State Bar is not the sole entity authorized to investigate a lawyer for engaging in unfair debt collection practices.

Contrary to the dissent, OCGA § 10-1-391 (b) does not constitute a "legislative mandate" for consistent interpretation of the FBPA and the Federal Trade Commission Act (FTCA) such that an attorney who violates the FTCA has also violated the FBPA. Consistent construction of these federal and state laws must take into account the differences between the statutory schemes. *Agnew v. Great Atlantic & Pacific Tea Co.*, 232 Ga. App. 708, 711 (2) (502 SE2d 735) (1998) (causation and injury are required elements under the FBPA, but not under the FTCA). The application of the FTCA to attorneys collecting consumer debt is by way of the FDCPA, a separate act which expressly addresses debt collection and applies to attorneys only because of the repeal of a prior exemption for them. *Heintz v. Jenkins*, supra at 294-295. Moreover, Congress obviously acts in a different governmental context than does the General Assembly. As already noted, if this state's legislature had intended to regulate the conduct of attorneys in relation to their clients notwithstanding this Court's unique role with respect thereto, one would expect to find a clear and specific provision like the regulation of false advertising of legal services in OCGA § 10-1-427. *Cripe v. Leiter*, supra.

4. We need not address whether application of the FBPA to the practice of law would violate the constitutional separation of powers doctrine. See *Board of Tax Assessors of Columbus v. Tom's Foods*, 264 Ga. 309, 310 (444 SE2d 771) (1994).

*Judgment affirmed. All the Justices concur, except Hines, Melton, and Nahmias, JJ., who dissent.*

MELTON, Justice, dissenting.

Because the FBPA is a law of general application that has nothing to do with impermissibly regulating the practice of law in violation of separation of powers, I must respectfully dissent from the majority's erroneous conclusion that the remedies relating to Appellee's allegedly abusive debt collection practices "must be found outside the FBPA." Maj. Op. at 293. Investigating violations of the law that happen to involve lawyers does not automatically amount to impermissibly "regulating" the practice of law, as a lawyer who violates the law is just as subject to investigation as any other common offender. See *Higgins v. Dept. of Public Safety*, 256 Ga. 288 (347 SE2d 562) (1986) (attorney given traffic citation for speeding); *Smith v. Jefferson County*, 201 Ga. 674 (40 SE2d 773) (1946) (attorney arrested in connection with helping client erect fence around property that client claimed was hers). See also *Midboe v. Commission on Ethics for Pub. Employees*, 646 So2d 351, 359 (La. 1994) ("A person possessing a law license is not exempt from the duties of citizenship or ordinary state laws") (citation omitted), overruled on other grounds, *Transit Mgmt. v. Commission on Ethics for Pub. Employees*, 703 So2d 576 (La. 1994).

The FBPA is a law of general application that applies to anyone who engages in consumer debt collection practices, and attorneys are not specifically exempted from the statute's application. See OCGA § 10-1-391 (FBPA "shall be liberally construed and applied to promote its underlying purposes and policies"); OCGA § 10-1-397 (Administrator authorized to issue cease and desist order to "*any person* [who] is using, has used, or is about to use any method, act, or practice declared . . . to be unlawful [by the FBPA]") (emphasis supplied); OCGA § 10-1-396 (no mention of attorneys in exemptions from application of FBPA). See also *1st Nationwide Collection Agency, Inc. v. Werner*, 288 Ga. App. 457 (654 SE2d 428) (2007) (violations of Federal Fair Debt Collection Practices Act also constitute violations of Georgia's FBPA). In this regard, the Administrator may initiate an investigation when it reasonably appears that any person

> has engaged in, is engaging in, or is about to engage in any act or practice declared to be unlawful by [the FBPA] or when [the Administrator] believes it to be in the public interest that an investigation should be made to ascertain whether a person in fact has engaged in, is engaging in, or is about to engage in any act or practice declared to be unlawful by [the FBPA].

OCGA § 10-1-403 (a). A lawyer, like any other person engaged in or about to engage in unlawful activity prohibited by the FBPA, would

be subject to investigation pursuant to the plain terms of the statute. There is no statutory exemption that would prohibit lawyers from being investigated when they are suspected of being involved in unfair business practices.

In this connection, it cannot be said that a mere investigation into alleged abusive debt collection practices conducted by lawyers would constitute regulating the practice of law in violation of the separation of powers principle. See *Heslin v. Connecticut Law Clinic of Trantolo & Trantolo*, 461 A2d 938 (Conn. 1983) (investigative demand provisions of Connecticut Unfair Trade Practices Act were applicable to attorneys and did not violate separation of powers where no specific exemption for attorneys existed in the statute). Indeed, compliance with the investigative demand here to determine whether or not the FBPA has been violated would not require Appellee to change how it practiced law, impose any additional requirements on Appellee's practice of law, or interfere with any attorney disciplinary proceedings that could be initiated in this case. Even though the majority purports to side step the issue of separation of powers by claiming that "[w]e need not address whether application of the FBPA to the practice of law would violate the constitutional separation of powers doctrine" (Maj. Op. at 293), the majority actually relies on a thinly-veiled separation of powers analysis in reaching its erroneous conclusion that the FBPA can have no application here. See *Haynes v. Yale-New Haven Hosp.*, 699 A2d 964, 972-973 (II) (Conn. 1997) (relying on separation of powers analysis applicable to legal profession from *Heslin*, supra, in order to limit application of Connecticut Unfair Trade Practices Act to entrepreneurial or commercial aspects of medical profession); Maj. Op. at 291. As explained more fully below, the majority reaches its erroneous conclusion simply because it misses the point that the FBPA is not being applied to impermissibly regulate the practice of law here, but to sustain an inquiry into potentially abusive *consumer debt collection practices* that fall squarely within the regulatory scope of the FBPA. See *1st Nationwide Collection Agency, Inc.*, supra. Because application of the FBPA here has nothing to do with impermissibly regulating the practice of law, and everything to do with regulating a commercial activity that may be properly investigated pursuant to the FBPA, there can be no violation of the separation of powers principle. See *Heslin*, supra, 461 A2d at 946-947 (III). In any event,

> [w]e need not in this case decide whether every provision of [the FBPA] permits regulation of every aspect of the practice of law by every member of the bar of this state. For now, we need conclude only that [the FBPA's] regulation of "the

conduct of any trade or commerce" does not totally exclude all conduct of the profession of law. For the purpose of sustaining an investigatory demand, [the FBPA] applies to the conduct of attorneys.

Id. at 943 (II).

Contrary to the majority's misreading of *Henderson v. Gandy*, 280 Ga. 95 (623 SE2d 465) (2005) and *Haynes v. Yale-New Haven Hosp.*, supra, this Court's decision in *Henderson* actually compels the result that the activities of Appellee here may be properly investigated by the Administrator. In *Henderson*, we relied on *Haynes*, supra, to limit the application of the FBPA to the entrepreneurial or commercial aspects of the medical profession. We did this because "[o]nly when physicians are engaging in the entrepreneurial, commercial, or business aspect of the practice of medicine are they engaged in 'trade or commerce' within the purview of the [FBPA]." (Citation and punctuation omitted.) Id. at 97. Where, however, the claims involve professional malpractice, we made clear that "[m]edical malpractice claims recast as FBPA claims cannot form the basis for a FBPA violation[, because to] hold otherwise would transform every claim for medical malpractice into a FBPA claim." (Citation and punctuation omitted.) Id. at 98. See also *Haynes*, supra, 699 A2d at 972 ("[P]rofessional negligence — that is, malpractice — does not fall under [the Connecticut Unfair Trade Practices Act].''). Here, Appellee is directly engaged in trade or commerce regulated by the FBPA *by collecting consumer debts from the public*. See *1st Nationwide Collection Agency, Inc.*, supra. We are not applying the FBPA to a private matter between an attorney and his or her client that would "transform [a] claim for [legal] malpractice into a FBPA claim." *Henderson*, supra, 280 Ga. at 98. Here, we are specifically dealing with commercial debt collection practices aimed at the general public, which fall directly within the purview of the FBPA. *1st Nationwide Collection Agency, Inc.*, supra, 288 Ga. App. at 459 (1). Thus, the rationale provided in *Henderson* shows exactly why the attorneys here *would* be subject to investigation under the FBPA, not why they would *not* be, as the majority contends. The collection of consumer debts, in and of itself, has nothing to do with the practice of law, as it is simply a commercial activity that any person can perform, and any person who engages in the activity is involved in "trade or commerce" governed by the FBPA. See *1st Nationwide Collection Agency, Inc.*, supra. Accordingly, to the extent that the attorneys in this case are involved in the debt collection process — again, an activity that anyone can perform — they are engaged in commercial activities that are directly regulated by the FBPA. Whether or not the individuals collecting the debts happen to be

lawyers makes no difference, as the FBPA applies directly to the commercial activities involved here and there is no statutory exemption that would prevent the individuals involved from being investigated pursuant to the terms of the statute.[1]

It also makes no difference that Appellee is collecting debts on behalf of clients as part of its law practice, as such law practice simply does not shield Appellee from investigation under the FBPA. Indeed, as explained above, the collection of consumer debts is indisputably a commercial activity that falls within the purview of the FBPA. Further, the focus here is not simply on the rendering of professional legal services, but the manner in which consumer debts are being collected. Just like any other law of general application, the FBPA would subject anyone to investigation who is engaged in unlawful practices with respect to debt collection. Under the majority's analysis, however, *any* illegal commercial activity taken by a lawyer "on behalf of a client" would not be subject to investigation by any State entity other than the State Bar, even where the relevant State statute that authorizes such investigation contains no express exemption for lawyers. Such an analysis would be untenable in the context of criminal statutes, and is equally untenable here. For example, as the majority would surely have to concede, a lawyer who punches another person in the face "on behalf of a client" would not be shielded from investigation for criminal battery by claiming that punching people in the face was simply part of the way that he practiced law on behalf of clients. Similarly, an attorney cannot abuse members of the public by engaging in unfair and unlawful debt collection practices and then shield himself from investigation under the FBPA because he was engaging in such unfair practices "on behalf of a client." A lawyer can, and must, practice law without punching people in the face. And a lawyer can, and must, practice law without violating the FBPA by abusing members of the public. The fact that one is practicing law does not place one above it. *Midboe*, supra, 646 So2d at 359.

As further evidence that an investigation under the FBPA has nothing to do with impermissibly regulating the practice of law here, an investigation into allegedly unfair debt collection practices does nothing to interfere with the disciplinary authority that lies within the

---

[1] It is not even clear in this case that the debts involved are being collected by lawyers. Appellee employs approximately four hundred and fifty persons, only ten of whom are lawyers, and the non-attorneys in the business are heavily involved in the initial debt collection process without the involvement of any of the attorneys. In any event, it makes no difference whether or not attorneys are or are not engaged at some point in the process, as the FBPA allows the Administrator to launch an investigation into Appellee's debt collection practices to determine whether or not the law is being violated.

exclusive province of this Court. See, e.g., *Scanlon v. State Bar of Ga.*, 264 Ga. 251, 252 (1) (443 SE2d 830) (1994) ("Matters relating to the practice of law, including the admission of practitioners, their discipline, suspension, and removal, are within the inherent and exclusive power of the Supreme Court of Georgia.") (citations and punctuation omitted). Indeed, all of the possible punishments for violations of the Professional Rules of Conduct would be available and uncompromised in any way if an investigation of Appellee's debt collection practices implicated aspects of the professional duties of Appellee's individual lawyer employees. See State Bar Rule 4-102 (possible discipline for violations of Rules of Professional Conduct includes disbarment, suspension, public reprimand, review panel reprimand, investigative panel reprimand, or formal admonition). Under the majority's analysis, however, the *sole* type of State investigation against a lawyer for engaging in unfair debt collection practices would be limited to actions by the State Bar to determine whether an attorney should be disbarred, suspended, publicly reprimanded, subjected to a review panel reprimand, subjected to an investigative panel reprimand, or given a formal admonition. Id. Such an investigation and the remedies available following such an investigation have nothing to do with any investigation under the FBPA. Further, the entity responsible for pursuing such an investigation and remedies — the State Bar of Georgia — does not look to the FBPA to determine whether or not individual lawyer misconduct would be subject to attorney discipline. Rather, the State Bar focuses its investigation and enforcement efforts on the lawyer specific Rules of Professional Conduct.

In this sense, even the remedies authorized by the FBPA do not interfere with the potential sanctions that may be imposed for individual lawyer misconduct within Appellee's company. Unlike the lawyer specific Rules of Professional Conduct and the punishments available for violations of them, under the FBPA, the Administrator may (1) issue a cease and desist order prohibiting any unfair practice; (2) impose a civil penalty for those who continue to engage in the prohibited practice; or (3) petition the superior court to enter (a) a temporary restraining order or temporary or permanent injunction, (b) a civil penalty, (c) a declaratory judgment, (d) restitution to any person adversely affected by the defendant's unfair practices, (e) the appointment of a receiver, auditor, or conservator for the defendant or its assets; or (f) other relief as the court deems just and equitable. OCGA § 10-1-397 (a). All of these remedies are designed, not to discipline an attorney for the manner in which he or she practices law, but to prevent that individual from engaging in unlawful commercial activities. Indeed, any lawyer could continue to practice law and collect debts on behalf of clients after being subjected to a cease and desist order from the Administrator. That

lawyer would just have to start collecting debts in a manner permitted by the FBPA, just like any other person who collected consumer debts. Individual Bar discipline, on the other hand, could result in the attorney being suspended from the practice of law or disbarred from practicing law entirely (State Bar Rule 4-102) — leaving the lawyer unable to practice law in any capacity.[2] However, despite the fact that even the *remedies* available under the FBPA and those available to the State Bar have nothing to do with each other, the majority would not even allow a mere *investigation* into the alleged unfair debt collection practices of Appellee. This is particularly troubling where the investigation authorized by the FBPA would merely complement, rather than impede, any potential separate investigation by the State Bar that could lead to individual attorney discipline. Instead of allowing an investigation under the FBPA to complement that of the State Bar, however, the majority would choose to insulate lawyers from any FBPA investigation, and accordingly shield them from any remedies that could be pursued by the Administrator — even though such remedies could be pursued entirely separately from any action that the Bar might deem appropriate.

Moreover, the majority's interpretation of the FBPA runs directly contrary to the express legislative intent of the statute. Specifically, OCGA § 10-1-391 (b) provides that

> [i]t is the intent of the General Assembly that [the FBPA] be interpreted and construed consistently with interpretations given by the Federal Trade Commission in the federal courts pursuant to Section 5 (a) (1) of the Federal Trade Commission Act (15 U.S.C. Section 45 (a) (1)) [the "FTC Act"], as from time to time amended.

The United States Supreme Court and this Court have made clear that the FTC Act would reach the commercial conduct of professionals such as doctors and dentists. *FTC v. Indiana Federation of Dentists*, 476 U. S. 447 (106 SC 2009, 90 LE2d 445) (1986) (policy among dentists to refuse to submit x-rays to dental insurers for use in benefits determination constituted an unfair method of competition under the FTC Act); *Henderson*, supra, 280 Ga. at 99. The FTC Act would logically reach the commercial practices of attorneys as well. See *Heslin*, supra, 461 A2d at 942 (II) ("Although the federal courts have not directly addressed the issue of whether the [FTC

---

[2] Ironically, however, this suspended or disbarred lawyer would still be able to work as a debt collector.

Act] applies to attorneys, . . . it is reasonable to conclude that the federal courts would construe the FTC Act as applying to attorneys."). As explained above, the collection of consumer debts *is* a commercial practice, regardless of who is collecting the consumer debts. The FTC Act would apply to such practices. See 15 USC § 1692l (a) ("[A] violation of [the Federal Fair Debt Collection Practices Act] shall be deemed an unfair or deceptive act or practice in violation of [the FTC Act]"). The majority, however, would interpret the FBPA such that the statute would *not* apply where the FTC Act *would*, which is directly contrary to the legislative mandate that we interpret the statutes in such a manner that they be consistent with one another. OCGA § 10-1-391 (b).

In this regard, as the majority concedes, the Federal Fair Debt Collection Practices Act (the "FDCPA") applies to the conduct of the attorneys here. Maj. Op. at 293. *Heintz v. Jenkins*, 514 U. S. 291 (115 SC 1489, 131 LE2d 395) (1995) (FDCPA applies even to lawyers regularly engaged in collecting consumer debt through litigation). This being the case, it must also be said that if the attorneys here have violated the FDCPA then they have also violated the FTC Act. See 15 USC § 1692l (a). See also *1st Nationwide Collection Agency, Inc.*, supra, 288 Ga. App. at 459 (1) ("[A] violation of the FDCPA is clearly considered a violation of the Federal Trade Commission Act"). The lawyers would also be violating the FBPA, as a "violation of the FDCPA also constitute[s] a violation of [Georgia's] FBPA." *1st Nationwide Collection Agency, Inc.*, supra, 288 Ga. App. at 459 (1). Based on the violation of federal law, the attorneys would be subject to investigation by the Federal Trade Commission, the regulatory entity responsible for enforcement of the FDCPA. 15 USC § 1692l (a) ("Compliance with [the FDCPA] shall be enforced by the [Federal Trade] Commission"). Based on the violation of the FBPA, the lawyers would be subject to investigation by the Administrator. See OCGA § 10-1-403 (a). Consistent with the federal interpretations given to the FTC Act in relation to professionals, the scope of enforcement given to the FTC in relation to the types of collection practices involved here, and the FBPA's application to these same activities, the Administrator should be free to investigate the debt collection practices being employed by Appellee in this case.

The investigation here is not rooted in legal malpractice. It is being conducted to root out potential illegal commercial activity that just happens to be conducted by an alleged law firm. Such an investigation is proper pursuant to the terms of the FBPA, and I believe that holding otherwise inappropriately places lawyers above the law by writing an exception into a law of general application that simply does not exist. "This Court is forbidden from engaging in such an exercise. *State v. Fielden*, 280 Ga. 444, 448 (629 SE2d 252)

(2006) ('[U]nder our system of separation of powers this Court does not have the authority to rewrite statutes.').'' *Davis v. Dunn*, 286 Ga. 582, n. 4 (690 SE2d 389) (2010).[3] Indeed,

> attorneys are subject to laws other than the Rules of Professional Conduct, and sometimes those laws relate to their actions as attorneys. A person who receives a license to practice law and adheres to the Rules of Professional Conduct is not insulated from other regulations and conditions under which the license may be used. . . . For example, a lawyer's business is affected and limited by local zoning ordinances, yet these regulations do not impede or frustrate this Court's authority over the practice of law. A lawyer who converts and commingles his clients' money may have violated this Court's disciplinary rules but is also subject to the state criminal theft laws. Similarly, an attorney who is a public official or employee is subject to the Rules of Professional Conduct, as well as the ethics code rules which apply to all public servants, as long as the ethics code provisions do not impede or frustrate this Court's authority to regulate the practice of law.

(Citations omitted.) *Midboe*, supra, 646 So2d at 359. Moreover, the majority's holding runs contrary to the express legislative mandate that Georgia's FBPA be construed consistently with applicable interpretations of federal law. OCGA § 10-1-391 (b). I therefore respectfully dissent.

I am authorized to state that Justice Hines and Justice Nahmias join in this dissent.

DECIDED JUNE 7, 2010.

*Thurbert E. Baker, Attorney General, Sidney R. Barrett, Jr., Senior Assistant Attorney General, Jeffrey W. Stump, Amy C. Meyer Burns, Assistant Attorneys General*, for appellant.

*Balch & Bingham, Michael J. Bowers, J. Matthew Maguire, Jr., Marlie A. McDonnell*, for appellee.

---

[3] To reach its intended result, the majority relies on case law from another jurisdiction interpreting an unfair debt collection statute that contained a "learned profession exemption." See *Reid v. Ayers*, 531 SE2d 231, 235 (N.C. App. 2000). Again, Georgia's FBPA contains no such exemption. The majority's reliance on this foreign case law is therefore inappropriate, as it only serves to impermissibly graft language onto Georgia's FBPA that does not exist.